OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Oakwood Club, Appellant, v. Cuyahoga County Board of Revision
et al., Appellees.
[Cite as Oakwood Club v. Cuyahoga Cty. Bd. of Revision
(1994),     Ohio St.3d      .]
Taxation -- Real property valuation -- Board of Tax Appeals'
     decision will not be disturbed, when.
     (No. 93-519 -- Submitted December 20, 1993 -- Decided
September 14, 1994.)
     Appeal from the Board of Tax Appeals, Nos. 90-M-1446 and
90-M-1459.
     The issue in this appeal is the true value of the Oakwood
Club, a private country club, which occupies approximately one
hundred fifty-six acres of land, ninety-four acres in the city
of Cleveland Heights and sixty-two acres in the city of South
Euclid.  Oakwood's facilities include an eighteen-hole golf
course, driving range, swimming pool, eight outdoor tennis
courts, an indoor tennis facility with four tennis courts, a
clubhouse and several auxiliary buildings.
     Oakwood's clubhouse, originally built as a private
residence around 1900, has been remodeled since, with major
restorations done in 1971 and 1973.  The clubhouse has
administrative offices, men's and women's locker rooms, various
card and meeting rooms, a living room, a barroom, a kitchen and
a large dining facility.  On the lower level are service areas,
squash courts, an indoor golf teaching area, saunas and a
tennis lounge.  Additional auxiliary buildings are the pro
shop, office, drink house, and buildings for maintenance, golf
cart storage, and summer day camp.  There is also an extensive
asphalt parking area.
     For tax year 1988, the Cuyahoga County Auditor assessed
the true value of the property at $3,373,950.  Upon complaint
by Oakwood, the Cuyahoga County Board of Revision agreed with
that valuation and Oakwood appealed to the Board of Tax Appeals
("BTA").
     The evidence presented at the BTA consisted of the expert
appraisal reports and testimony of Richard Van Curen, for
appellant Oakwood, and Charles Braman, for appellee board of
revision.  The appraisers agreed that the income approach to

value was inappropriate and each of them utilized the cost approach and the market comparison approach. Van Curen estimated the true value at $2,600,000, while Braman said the property was worth $4,500,000 under the cost approach and $4,410,000 under the market approach. The BTA determined the true value to be $4,410,000 and Oakwood appealed.

The cause is now before this court upon an appeal as of right.

Kahn, Kleinman, Yanowitz & Arnson Co., L.P.A., and Thomas L. Dettlebach, for appellant.

Stephanie Tubbs Jones, Cuyahoga County Prosecuting Attorney, and Saundra Curtis-Patrick, Assistant Prosecuting Attorney, for Cuyahoga County Board of Revision and Cuyahoga County Auditor.

Per Curiam. The decision of the BTA is affirmed.

This appeal presents a typical valuation dispute based upon conflicting appraisals. Oakwood contends that the BTA's decision is unreasonable and unlawful because (1) it accepts Braman's testimony, which failed to adjust for improvements made to the subject property subsequent to tax lien date, or for the subsequent sale of excess land from his principal comparable sale, and (2) it did not determine the true value of the subject property but instead determined the "value in use" of the property, contrary to law.

While the appraisers disagreed on several points, they did agree that the highest and best use of the property was as a private country club and that the use of the income approach to value was inappropriate. Both appraisers used the Marshall Evaluation Service, but disagreed regarding costs of replacement and depreciation deductions.

Braman testified about the market approach and the cost approach. He made adjustments based upon the time of sale of comparable properties, location, building size, site improvement and the indoor tennis facility. He structured the appraisal by computing a per-hole value of the selected comparable country club properties and of the subject property. He estimated the adjusted value of the comparables at $236,500 to $261,750 per hole and Oakwood's at $245,000 per hole. On that basis Braman concluded that the true value of the subject property was $4,410,000. This evidence did not constitute "the forbidden 'current use method'" discussed in Dinner Bell Meats, Inc. v. Cuyahoga Cty. Bd. of Revision (1984), 12 Ohio St.3d 270, 271, 12 OBR 347, 348, 446 N.E.2d 909, 910.

The BTA's use of the market method of determining value was proper. The BTA was authorized to find, as it did, that the market approach was appropriate and the cost approach was not. See Cincinnati Milacron Industries, Inc. v. Brown Cty. Bd. of Revision (1988), 35 Ohio St.3d 32, 517 N.E.2d 896. See, also, R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision (1988), 38 Ohio St.3d 198, 527 N.E.2d 874.

We again endorse paragraphs three and four of the syllabus in Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433:

"3. The Board of Tax Appeals is vested with wide

discretion in determining the weight to be given to evidence and the creditability of witnesses which come before the board. * * *

"4. The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmitavely appears from the record that such decision is unreasonable or unlawful."

The BTA's acceptance of Braman's appraisal, adjusted as it was for costs of improvements since the tax lien date, and in view of Braman's explanation of why the sale of excess lands does not affect the true value of comparable properties, is not unreasonable or unlawful.

Oakwood's argument on value in use is not persuasive. In Dinner Bell Meats, Inc., supra, 12 Ohio St. 3d at 271-272, 12 OBR 348-349, 446 N.E.2d at 910-911, we said:

"Appellant contends that the appraisal of William Kaplan was based on the forbidden 'current use method,' and, as such, should not have been considered by the board * * *.

"* * *

"Initially we note that Section 2, Article XII of the Ohio Constitution mandates that valuations of property cannot be limited to considerations of current use only to the exclusion of all other relevant factors. It does not prohibit altogether any consideration of the present use of a property. A review of the two appraisals before the Board of Tax Appeals reveals that each appraiser viewed the property as being 'special purpose' in nature. * * *

"It therefore appears, that in utilizing the 'cost approach' for a 'special purpose' building, Kaplan simply considered the utility of the properties in conjunction with the highest and best use of the meatpacking facility. The record supports the conclusion that Kaplan's report was a proper 'cost approach' appraisal, not a 'current use' appraisal as proscribed under the Park Investment Co. series of cases [culminating in State ex rel. Park Invest. Co. v. Bd. of Tax Appeals (1972), 32 Ohio St.2d 28, 61 O.O.2d. 238, 289 N.E.2d 579]. Accordingly, the appraisal was properly considered by the board."

From the record before us, we find that Oakwood failed to present evidence to establish that the decision of the BTA was unreasonable or unlawful. We affirm the BTA's decision.

Decision affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, Resnick and Pfeifer, JJ., concur.

F.E. Sweeney, J., dissents.